1
2
3
4
5
6                              UNITED STATES DISTRICT COURT

7                                   DISTRICT OF NEVADA

8                                         * * * * *

9    MERLY CS RIGER,                         )
                              Plaintiff,     )    3:14-cv-00462-LRH-VPC
10                                           )
     vs.                                     )
11                                           )    ORDER
     HOMETOWN MORTGAGE, LLC;                 )
12   NATIONAL DEFAULT SERVICING              )
     CORPORATION; and U.S. BANK, N.A.;       )
13                                           )
                              Defendants.    )
14   _____)

15          Before the Court is Plaintiff Merly CS Riger's ("Riger") Motion for Reconsideration of

16   Order Granting Motion to Dismiss and Motion to Certify Question of Law to the Nevada

17   Supreme Court.  Doc. #45.[1]  Defendant U.S. Bank National Association ("U.S. Bank") filed an

18   Opposition (Doc. #46), to which Riger did not reply.

19   **I.      Facts and Procedural Background**

20          After purchasing the subject property with her then-husband, Riger recorded a Deed of

21   Trust with the Washoe County Recorder's Office on April 26, 2004, naming Hometown

22   Mortgage, LLC as the Lender, United Title of Nevada as Trustee, and requesting that all tax

23   statements be sent to Wells Fargo Home Mortgage, Inc.  Doc. #3 ¶8.  The National Default

24   Servicing Corporation ("NDSC") recorded a Notice of Default ("NOD") on behalf of U.S. Bank

25   on November 17, 2009.  *Id.* ¶9.  On December 9, 2009, a Substitution of Trustee from United

26   Title to NDSC was executed, and Mortgage Electronic Registration Systems, Inc. ("MERS")

27   executed a Corporation Assignment of Deed of Trust, which transferred to U.S. Bank all

28   _____

              [1] Refers to the Court's docket number.

1   beneficial interest in the property owned by Riger.  Doc. #45 at 3; Doc. #46 at 4.  Because the

2   property was used as rental property when the NOD was recorded, Defendants recorded a

3   Certificate of Mediation on March 24, 2010, stating that no mediation was requested or required.

4   *Id.* ¶10.  U.S. Bank recorded a First Notice of Sale ("First NOS") on March 24, 2010.  *Id.* ¶11.

5   On April 5, 2010, Riger filed suit against U.S. Bank and NDSC in the Second Judicial

6   District Court, Washoe County, Nevada, claiming causes of action related to wrongful

7   foreclosure.  Doc. #25, Ex. 10.  Riger's complaint was merged with the *In re Mortgage*

8   *Electronic Registration Systems Litigation*, and the class filed an Amended Master Complaint on

9   June 4, 2011.  *Id.*, Ex. 11.  The United States District Court for the District of Arizona dismissed

10  the class' claims on October 3, 2011, and the Ninth Circuit affirmed the dismissal on June 12,

11  2014.  *Id.*, Ex. 12; *id.*, Ex. 13.[2]

12  U.S. Bank recorded a Second Notice of Sale ("Second NOS") on May 15, 2014, and

13  scheduled foreclosure for August 25, 2014.  Doc. #3 ¶12.  By the time of the Second NOS, Riger

14  had divorced her husband and moved into the property as her principal residence.  *Id.* ¶13.  Riger

15  attempted to elect mediation upon receipt of the Second NOS, but her request was returned by

16  Nevada State Foreclosure Mediation without explanation.  *Id.* ¶15.  NDSC conducted a

17  foreclosure sale on the property at 11:00 a.m. on August 25, 2014.  *Id.* ¶21.  An Assignment of

18  Deed of Trust was recorded on August 25, 2014, at 2:09 p.m., which assigned the deed from

19  MERS to U.S. Bank.  *Id.* ¶20.

20  Riger filed this Complaint and recorded a lis pendens on September 3, 2014.  *Id.*  The

21  Complaint stated five causes of action: (1) violations of NRS § 107.080; (2) actual fraud; (3)

22  violations of the Nevada Deceptive Trade Practices Act; (4) breach of the implied covenant of

23  good faith and fair dealing; and (5) quiet title.  *Id.*  U.S. Bank filed its Motion to Dismiss on

24  November 7, 2014.  Doc. #24.  In her Opposition, Riger requested that the Court grant leave to

25  amend to file a First Amended Complaint, and attached the proposed amended complaint.  The

26  Amended Complaint excluded Riger's second through fourth claims, and only alleged causes of

27

28      [2] In the January 14, 2015 Order, the Court rejected the argument that Riger's present lawsuit was barred by the doctrine of claim preclusion.  Doc. #44 at 4-5.

1  action for quiet title and violations of NRS § 107.080.  Doc. #37, Ex. 1.  The Court granted U.S.

2  Bank's Motion to Dismiss on January 14, 2015, and denied Riger's request for leave to amend

3  because amendment would be futile.  Doc. #44.

4  **II.    Discussion**

5      Riger argues first that the Court should reconsider its Order dismissing her deficient

6  foreclosure claim under NRS § 107.080.  Second, Riger argues—for the first time—that her

7  deficient foreclosure action hinges on an unsettled question of Nevada law, and requests that the

8  Court certify this question of law to the Nevada Supreme Court.

9          **A.    Motion to Reconsider**

10      Upon motion by a party within twenty-eight days of the entry of judgment, the court may

11  alter or amend its findings under  Federal Rule of Civil Procedure 59(e).  A party can also seek

12  reconsideration under Federal Rule of Civil Procedure 60(b).  "Reconsideration is appropriate if

13  the district court (1) is presented with newly discovered evidence, (2) committed clear error or

14  the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling

15  law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.

16  1993).  A motion for reconsideration "may not be used to raise arguments or present evidence for

17  the first time when they could reasonably have been raised earlier in the litigation." *Carroll v.*

18  *Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).  District courts have discretion regarding whether to

19  grant a motion to amend under Rule 59(e) or 60(b). *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir.

20  2014).

21      Riger's Motion for Reconsideration centers on the assertion that the Court erred by

22  treating her deficient foreclosure claim as waived.  However, the Court did not treat her deficient

23  foreclosure claim under NRS § 107.080 as waived, and directly addressed the merits of that

24  claim in the January 14, 2015 Order.  Doc. #44 at 6-7.  Riger is correct, however, that the Court

25  inadvertently believed that Riger did not preserve a portion of her deficient foreclosure claim,

26  based on the argument that U.S. Bank was not acting as a Trustee at the time of the foreclosure

27  sale. *See id.* at 7 n.3.  Accordingly, the Court has reviewed the prior order, the parties' briefs,

28  and relevant case law, and addresses the issue of U.S. Bank's Trustee status at the time of the

1   NOD in this Order.

2        "In a nonjudicial foreclosure, the trustee may sell the property to satisfy the obligation

3   only after certain statutory requirements are met."  *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d

4   249, 254-55 (Nev. 2012).  These requirements include:

5        First, the trustee must give notice by recording a notice of default and election to
         sell and serving the grantor with a copy of that notice. NRS 107.080(2)(c). The
6        grantor then has a certain number of days in which to make good the deficiency.
         NRS 107.080(2)(a) and (b). After at least three months have passed from the
7        recording of the notice of default, the trustee must give notice of the sale. NRS
         107.080(4).
8

9   *Id.* at 255.  A sale can be voided, however, if it was "carried out without substantially complying

10  with the statutory requirements."  *Id.* (citing NRS § 107.080(5)).  For owner-occupied properties,

11  a sale cannot be recorded unless the trustee records a certificate stating that "no mediation is

12  required" or that "mediation has been completed."  NRS § 107.086(2)(d)(1)-(2).  The statute

13  defines "owner-occupied housing" as "housing that is occupied by an owner as the owner's

14  primary residence."  NRS § 107.086(15)(e).

15       Riger argues that "NDSC was not the properly substituted trustee when the NOD and

16  mediation notices were sent to [Riger], violating N.R.S. § 107.080(5)."  Doc. #45 at 9.  NRS §

17  107.080(5) states that a foreclosure is void if the "trustee or other person authorized to make the

18  sale does not substantially comply with the provisions" of NRS § 107.080.  Riger argues that her

19  foreclosure was therefore defective for failure to comply with NRS § 107.080 because "NDSC

20  had no standing to issue the NOD and the mediation notices and MERS never 'ratified' those

21  actions."  Doc. #45 at 10.  Indeed, NDSC was not substituted as Trustee until December 9, 2009,

22  approximately three weeks after NDSC recorded a NOD on Riger's property.  However, the fact

23  that NDSC was substituted as Trustee shortly after it recorded a NOD on U.S. Bank's behalf

24  does not establish that the foreclosure was deficient under NRS § 107.080.  In other cases in

25  which NDSC was substituted as trustee after recording a notice of default or sale, the United

26  States District Court for the District of Nevada has held that such a timeline is "fairly common

27  and not improper in foreclosure."  *Wensley v. First Nat'l Bank of Nev.*, 874 F. Supp. 2d 957, 965

28  (D. Nev. 2012).  Moreover, "Nevada law [does not] require a substitution of trustee be recorded

4

1    prior to a notice of default." *Swapp v. Wells Fargo Bank, N.A.*, No. 2:12-cv-0179, 2012 WL

2    5989498, at *4 (D. Nev. Nov. 29, 2012).

3          Furthermore, the record indicates that MERS ratified NDSC's issuance of the NOD by

4    subsequently recording the Substitution of Trustee document.  "When a beneficiary ratifies the

5    actions of its agent before it is properly substituted, that ratification cures any defect in the

6    filing." *Hickerson v. Wells Fargo Bank, N.A.*, No. 3:11-cv-0812, 2012 WL 194616, at *2 (D.

7    Nev. Jan. 20, 2012).  Subsequent recording of a Substitution of Trustee constitutes valid

8    ratification. *See Wensley*, 874 F. Supp. 2d at 965 ("NDSC's formal substitution as trustee after

9    signing the notice as an agent appears to show, at the least, ratification of the previously-claimed

10   agency.").  The Court therefore finds that the NDSC's action sending the NOD was subsequently

11   ratified by MERS and U.S. Bank.  Accordingly, the Court's inadvertent failure to consider

12   Riger's argument that NDSC was not a valid trustee when it sent the NOD is not grounds for

13   reconsideration because the NOD was ratified, and recording the substitution of NDSC as trustee

14   after the NOD does not establish deficient foreclosure, and the NOD was subsequently ratified.

15         Riger also has not identified compelling reasons for the Court to reconsider denial of her

16   Motion to Amend.  The court must grant leave to amend "when justice so requires."  Fed. R. Civ.

17   P. 15(a)(2).  If the court grants a motion to dismiss, "[t]he standard for granting leave to amend is

18   generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990).  The Court

19   will generally only decline to grant leave to amend if the party opposing amendment shows "bad

20   faith, undue delay, prejudice to the opposing party, futility of amendment," or that the plaintiff

21   has previously amended the complaint without healing its defects. *United States v. Corinthian

22   Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th

23   Cir. 2004)).  The Court properly denied Riger's Motion to Amend as futile because Riger cannot

24   establish that U.S. Bank had a duty to mediate when the NOD was filed—because the unit was

25   not owner-occupied—or that the foreclosure was deficient because the substitution of NDSC as

26   trustee was not recorded until after the NOD.  As a result, amendment would be futile because

27   the proposed amended complaint attached as an exhibit to Riger's motion still fails to state a

28   claim upon which relief can be granted. *See* Doc. #37, Ex. 1.

1

      **B.**     **Motion to Certify Question of Law**

2

      Riger also moved the Court to certify a question of law to the Nevada Supreme Court:

3

"Does the requirement to mediate under NRS 107.086 on owner-occupied properties attach to the

4

Notice of Default or to the exercise of the power of sale?"  Doc. #45 at 13.

5

      Nevada Rule of Appellate Procedure 5 grants the Nevada Supreme Court the power to

6

"answer questions of law certified to it by the Supreme Court of the United States, a Court of

7

Appeals of the United States or of the District Columbia, a United States District Court, or a

8

United States Bankruptcy Court."  The United States Supreme Court has acknowledged that

9

"certification of novel or unsettled questions of state law for authoritative answers by a State's

10

highest court . . . may save 'time, energy, and resources and hel[p] build a cooperative judicial

11

federalism.'"  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (quoting *Lehman*

12

*Bros. v. Schein*, 416 U.S. 386, 391 (1974)).  Classification is not mandatory, and "when a federal

13

court confronts an issue of state law which the state's highest court has not addressed, the federal

14

court's task typically is to predict how the state's highest court would decide the issue."

15

*Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008).  "When a party

16

requests certification for the first time after losing on the issue, that party must show 'particularly

17

compelling reasons' for certifying the question."  *Id.* at 1226 (quoting *Complaint of McLinn*, 744

18

F.2d 677, 681 (9th Cir. 1984)).

19

      This Motion relates to the Court's determination that defendants did not have a duty to

20

mediate prior to foreclosing on Riger's property because it was not owner-occupied at the time of

21

the NOD.  Riger's Complaint states that for owner-occupied property, the trustee must comply

22

with NRS § 107.068(2)(d), which requires a certificate stating that no mediation is required or

23

that mediation has been completed.  In its Order entered on January 14, 2015, the Court held:

24

      [T]he requirement to mediate only attaches to the NOD, and the property was not
owner-occupied when the NOD was filed on November 17, 2009.  Nevada law

25

only recognizes a statutory mediation requirement for owner-occupied properties,
and notes that mediation must be requested within thirty days of the NOD.  *See*

26

*Pasillas v. HSBC Bank USA*, 255 P.3d 1281, 1284 (Nev. 2011) ("The program
requires that a trustee seeking to foreclose on an owner-occupied residence

27

provide an election-of-mediation form along with the notice of default and
election to sell."); NRS § 107.080(3).  The Court is aware of no precedent

28

requiring the lender to send an additional election-of-mediation form for a

1    subsequent notice of sale that does not include a subsequent notice of default, nor
2    has Riger identified such precedent.

3    Doc. # 44 at 7.  Riger argues that certification of this question to the Nevada Supreme Court

4    would clarify the legal effect of Riger's moving onto the property after the NOD in this case.

5    Moreover, Riger states that "this issue is of extreme importance and will have significance to

6    many individuals beyond the parties to this lawsuit," and certification of the question would

7    "substantially aid this court in its determination of the issues raised not only by the parties in this

8    action, but also in other cases pending before the District Court."  Doc. #45 at 14.

9         A district court should not certify a question when the statutory language is clear, and for

10   any ambiguities, district courts are encouraged to predict how the Nevada Supreme Court would

11   interpret the statutory language.  *Bank of the W. v. Great Falls Ltd. P'Ship*, No. 2:09-cv-0388,

12   2012 WL 2415519, at *1 (D. Nev. June 26, 2012).  NRS § 107.086(1) states that "the exercise of

13   the power of sale pursuant to NRS 107.080 with respect to any trust agreement which concerns

14   *owner-occupied housing* is subject to the provisions of this section."[3]  NRS § 107.086(3)

15   provides that "not later than 30 days after service" of notice, the grantor must complete a

16   mediation form and serve notice upon the party being foreclosed upon.  Foreclosure Mediation

17   Rule 7.1, as written when the NOD was recorded, provides that eligibility for the Foreclosure

18   Mediation Program:

19         applies to any grantor or person (homeowner) who holds the title of record and is
          the owner-occupant of a residence as to which a notice of default and election to
20        sell has been recorded on or after July 1, 2009.  For purposes of these rules, an
          owner-occupant includes the trustee of a revocable or irrevocable trust if the
21        trustor or a beneficiary of that trust resides in the residence at the time of the
          recordation of the notice of default and election to sell.
22

23   Doc. #40, Ex. 22 at 6.  After reviewing the submissions of the parties, the Court finds that the

24   most credible interpretation of the language of the applicable statutes and rules is that the

25   foreclosing party has an obligation to send an election-of-mediation form within thirty days of

26   the NOD.  As such, U.S. Bank fulfilled this obligation and was not required to send an additional

27

28        [3] Owner-occupied housing is defined as "housing that is occupied by an owner as the owner's
     primary residence."  NRS § 107.086(15)(e).

7

1    mediation form upon learning that Riger moved into the property after the NOD.  As such, Riger

2    cannot establish that U.S. Bank did not substantially comply with the provisions of NRS §

3    107.080(5).

4         That Nevada precedent does not state an obligation to send a new election-of-mediation

5    form if the property becomes owner-occupied after the owner receives a NOD does not indicate

6    that this is an unsettled question of state law.  Rather, the absence of this requirement indicates

7    that, based on the clear language of the statute as currently written, the foreclosing party fulfills

8    its obligations under the statute once it sends an election-of-mediation form within thirty days of

9    the NOD.  Because Riger raised this motion for the first time after losing on the issue, she "must

10   show 'particularly compelling reasons' for certifying the question." *McGhan*, 572 F. Supp. 2d at

11   1225.  For the reasons discussed above, the Court finds that Riger has failed to meet this burden,

12   and denies her Motion to Certify.

13   **III.     Conclusion**

14        IT IS THEREFORE ORDERED that Riger's Motion for Reconsideration (Doc. #45) is

15   DENIED.

16        IT IS FURTHER ORDERED that Riger's Motion to Certify Question of Law to the

17   Nevada Supreme Court (Doc. #45) is DENIED.

18        IT IS SO ORDERED.

19        DATED this 21st day of April, 2015.

20                                                          _____

21                                                          LARRY R. HICKS
                                                           UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

8